[Auerbach et al. v. Pritchett.]

# Auerbach *et al. v.* Pritchett.

### *Bill in Equity to Enforce Vendor's Lien.*

| 58 | 451 |
| 102 | 539 |
| 58 | 451 |
| 103 | 127 |
| 58 | 451 |
| 107 | 443 |
| 58 | 451 |
| 142 | 673 |

1. *Promissory note ; what is not ; what contract not within § 2890 of Code.*—A cotton obligation, or promise to pay cotton "raised on land sold to the obligor, cultivated to the best of his skill and ability, as second payment on said tract of land, to be delivered to the payee," &c., is not a promissory note, nor one of the contracts enumerated in section 2890 of the Code of 1876, on which actions "must be prosecuted in the name of the party really interested, whether he has the legal title or not."

2. *Same; death of payee; when legal title will not pass by indorsement.*—Where the payee of such obligation dies, the legal title thereto vests in his personal representative; but between the time of his death and the appointment of his widow as administratrix, the legal title and the right to sue is in abeyance, and she cannot then transfer such title or right to sue by indorsing the obligation to a third party.

3. *Same ; necessary parties to bill to enforce vendor's lien.*—Though such widow indorse such obligation before her appointment as administratrix. the legal title thereto vests in her when so appointed, and she and her indorsee become necessary parties complainant to a bill seeking to enforce a lien on land for which such obligation was given as part payment of the purchase.

4. *Bill of exchange ; what is not.*—A bill of exchange is an order or letter requesting the payment of money; an order requesting the delivery of *cotton* is not such a bill.

5. *Same ; oral acceptance, sufficiency of.*—Under section 2101 of the Code of 1876, an oral acceptance of a bill of exchange is not binding; but in the absence of such statute an oral acceptance would be sufficient. An order for the delivery of cotton not being a bill of exchange, such statute has no application, and hence an oral acceptance thereof is sufficient.

6. *Same ; liability of maker to assignee ; estoppel.*—If a promissory note, or other evidence of debt, is purchased on the faith of a promise by the maker to pay it, he will be compelled, at all events, to pay the assignee, and is estopped from asserting the invalidity of the note as between himself and the payee, whether on the ground of fraud in the original contract, not known at the time of such promise, or of a subsequent failure of consideration. And the same rule applies if the promissor had previously accepted an order to pay the debt, or any part of it, to another.

7. *Promise to pay obligation ; burden of proof on assignee—*Where A. makes a written obligation payable to B., and B. assigns the same as collateral to C., who relies upon the agreement of A. to pay to him such obligation, the onus of proving such agreement rests on C.

8. *Exemption ; claim of by widow non-resident ; subordinate to what.*—An administratrix of her deceased husband, who resided with him in Florida at the time of his death, can claim no exemption under the statutes of Alabama; and if she asserted such claim under the statutes of Florida, she should set it up in the bill and establish it by proof. But if this were done, it could not prevail over a valid transfer made by deceased in his life time.

APPEAL from the Chancery Court of Coffee.

Heard before the Hon. HURIOSCO AUSTILL.

This was a bill filed by appellants, Theo. H. Auerbach and Martha Clements, administratrix of one P. R. Clements, de-

ceased, against L. W. Pritchett, appellee. The bill avers that P. R. Clements, in his life time, sold and conveyed to said Pritchett certain lands in Coffee county, for which he took two obligations from said Pritchett, one of which has been discharged, the other being as follows : " By first of December, 1875, I promise to pay P. R. Clements, or bearer, the amount of cotton raised on fifty acres of land, more or less, raised on the lands sold by P. R. Clements to L. W. Pritchett, cultivated to the best of my skill and ability, as second payment on the said tract of land, the above de- scribed cotton to be gathered in due season, hauled to the gin by said Pritchett, the said P. R. ,Clements furnishing bagging and ties for enclosing said cotton.

L. W. PRITCHETT."

That the complainant, Martha Clements, is now the widow of said Clements, deceased; that on the 21st of May, 1875, and subsequent to her husband's death, she and P. F. Terry, one of the heirs of said estate, for provisions in meat, corn, flour, and other necessary supplies sold to her by Auerbach, the other complainant transferred said obligation to said Auerbach, by the following indorsement thereon :

" TROY, May 1st, 1875.

For value received, we hereby transfer to T. H. Auerbach all the right, title, and interest we have in and to the within note. Witness our hands and seals.

MARTHA CLEMENTS,<br>J. M. TERRY,<br>P. F. TERRY.

Test : J. B. MURPHEE,
       JOHN C. BROWN."

That said estate is insolvent, and said note or obligation comprises the principal portion of the property of said de- ceased at the time of his death ; that one thousand dollars worth of the cotton due on said obligation is exempt from the claims of creditors, heirs and distributees of said estate, to complainant Martha Clements, as said widow, under the constitution and laws of Alabama, and in such belief she in- dorsed and transferred said obligation to said Auerbach for the advancements made by him of said necessary provisions, to the full value of said cotton or note ; that said provisions were for the benefit of minor heirs and herself; that said Martha Clements elects to claim said cotton or amount due on said note, or one thousand dollars thereof, as her exemp- tion ; and she again ratifies and confirms (by averment) the transfer of said note ; that said note is all the property that

has come into her hands as administratrix of said estate, except a horse and buggy worth seventy-five dollars; that said note is now the property of complainant Auerbach; that before the consummation of the "trade" as between the complainants, in regard to said note, "said Auerbach sent his agent, one John C. Brown, to inquire of the said Pritchett relative to said note or obligation, and asked him if he had any defense or offsets against said note; and he told the said Brown that he had none, that the note was all right, and that if the said Auerbach traded for said note or obligation he would deliver the cotton to him; that said Auerbach, upon the faith of said representations, was induced to trade for said note and to pay the full value therefor."

The bill prays that the chancellor, upon a final hearing, may decree a reference to the register to state an account ascertaining the amount of cotton raised by said Pritchett on the fifty acres, for the year 1875, and the value of said cotton on the 1st of December, 1875, and declare said amount to be a lien upon the land purchased; and for a sale of the same to pay said amount, and for general relief.

The answer of L. W. Pritchett, which admits many of the averments of the bill, alleges and denies as follows: That the said P. R. Clements did, on the 12th of December, 1873, sell and transfer to one N. Collins & Co., in writing, two hundred and seventy-one and 22-100 dollars worth of said cotton, and gave them an order, in writing, to respondent, instructing him to deliver to said N. Collins & Co. enough of said cotton to bring said amount; which order respondent accepted, and agreed to deliver said cotton at the special instance and request of said Clements, long before his death; that in accordance with said order, &c., respondent delivered to said N. Collins & Co. all the cotton raised on said fifty acres of land during the year 1875, which was only twenty-two hundred and fifty-two pounds of lint cotton, not exceeding in value two hundred and seventy-two dollars; that respondent has paid all of his purchase-money for said lands as agreed on by said Clements in his life time, and in strict compliance with the terms of his transfer and sale to N. Collins & Co.; that said cotton was the property of N. Collins & Co., and that said Martha Clements and P. F. Terry had no right to transfer said instrument to said Auerbach; that the said Clements had parted with all of his interest in said note or obligation long before his death; that said note was not exempt from the claims of creditors, &c.; that at the time of the death of said Clements, he and his family were residents and citizens of Jackson county, Florida, and that said note formed no part of his estate; that said Mar-

tha Clements had no right to claim the exemption as alleged in the bill; that said note, &c., formed not part of the estate or assets of deceased, at the time of his death; that said note is not the property of complainant Auerbach; that respondent never told said agent, John C. Brown, what is alleged in the bill, but that he told said Brown that the said P. R. Clements had sold and transferred said cotton to said Collins & Co., by the order, &c., as heretofore alleged in this answer. After answering the bill, the respondent sets out and asks that the matter in ʼrelation to the transfer to N. Collins & Co. be taken by way of plea. In addition, and as part of the answer, the following grounds of demurrer were interposed: 1st. Misjoinder of parties complainant; 2d. The bill shows no interest in Martha Clements; 3d. The bill fails to aver that Martha Clements, as administratrix, has any interest in or right to prosecute this suit; 4th. Failure to aver that Martha Clements was ever duly appointed administratrix; 5th. There is no averment of facts showing that Martha Clements is such administratrix; 6th. The bill shows that complainant, Auerbach, has no such interest in this suit as will authorize him to sustain this action; 7th. Want of equity in the bill—the facts, as stated, not authorizing the complainant, or either of them, to sustain this action.

Upon final hearing, the cause being submitted on pleadings and proofs, the chancellor decreed that, "under the averments of the bill, the complainant Auerbach is the only complainant who has any interest in the note sued on. Considering the well settled equity rule that, when two or more join as complainants in a bill, they must all have an interest in the subject matter of the suit and be entitled to some relief, the court is constrained to hold that the 1st, 2d, and 3d demurrers, which raise the question of misjoinder of parties complainant, are well taken, and are sustained." Whereupon the bill was dismissed.

The decree is now assigned as error.

W. D. WOOD, for appellants. —1. Assignee and assignor were properly joined as parties complainant, to enforce the lien of the instrument assigned.—1 Danl. Ch. Prac. 251; Corbin v. Emerson, 10 Leigh. 663; Smith v. Huley, 8 Mo. 559, 560; 1 Storp Eq. Pl. § 153; Calvert on Parties, 239, 248; Edmonson on Parties, 79-82; Plowman v. Biddle et al., 19 Ala. 180; Anderson v. Ryan, 3 Madd. Ch. R. 174; Blevins, Adm'r v. Buck, 26 Ala. 292; 9 Port. 697; 2 Ala. 572; 7 Ib. 386; 10 Ib. 283.

2. The rule in equity is well defined to be that, where the

[Auerbach et al. v. Pritchett.]

extent and validity of the transfer is not questioned, then it would not be error to proceed in the name of the assignee alone. Yet, it would not be error to join the assignor as a party complainant.—19 Ala. 180 ; 10 Ala. 283.

W. D. ROBERTS, *contra.*—1. There is a misjoinder of the parties plaintiff in the bill. If Auerbach is entitled to recover, the complainant, Martha Clements, is not, neither is she as administratrix of the estate of P. R. Clements, deceased. If they are not all entitled to relief, then neither can recover.—*Wilkins & Wilkins v. Judge & Dunklin,* 14 Ala. 135 ; *Moore et al. v. Moore et al.,* 17 Ala. 631; *Tucker v. Holley,* 20 Ala. 426; *Plant & Co. v. Voeglein & Vasser,* 30 Ala. 160 ; *Vaughan & Wife v. Lovejoy,* 34 Ala.; *Moore et al. v. Armstrong et al.,* 9 P. 697.

2. Whenever the defect of a misjoinder appears upon the face of the bill, it is subject to a demurrer.—*Whitaker v. De Graffenreid,* 6 Ala. 303 ; *Moore v. Armstrong,* 9 P. 697 ; *Colburn v. Broughton,* 9 Ala. 351 ; *Tucker v. Holly,* 20 Ala. 426 ; *Vaughan & Wife v. Lovejoy,* 34 Ala. 437.

3. The exemptions allowed by law are intended for the benefit of citizens of this State.—*Allen v. Monopee & Wisely,* 4 Ala. 554 ; *Boykin v. Edwards,* 21 Ala. 261. All the rights that Mrs. Clements took at the death of her husband, as his widow, are governed by the laws of Florida, as to his personal property.—*Johnson v. Copeland's Adm'r,* 35 Ala. 521.

4. Auerbach took no title or interest in the property by a private sale, even if made by the administratrix.—*Fambro v. Gantt,* 12 Ala. 298.

5. A sale made by a party in possession of the property, after the death of the intestate, and before administration granted, passed no title to the purchaser.—*Carpenter v. Grigg, Adm'r,* 20 Ala. 587.

6. The title to the cotton passed to N. Collins & Co. on the transfer to them by P. R. Clements, deceased, and the payment to them by the defendant Pritchett, was proper, and the plaintiffs in this suit are not entitled to recover on the merits. As to the motion to set down the demurrer to be heard separately, see 69th rule, Chancery Practice, R. C. page 833.

STONE, J.—The ' cotton obligation,' or promise to pay cotton, is not a promissory note, and is not one of the contracts enumerated in section 2890 of the Code of 1876, on which actions "must be prosecuted in the name of the party really interested, whether he has the legal title or not." This

is not a contract for the payment of money, but an obliga-
tion to cultivate land in cotton, and deliver the product to
the payee, Clements. The legal title to the paper, and the
right to sue upon it, passed to, and vested in Mrs. Clements,
when she was appointed administratrix of her deceased hus-
band. Between the death of Mr. Clements and her appoint-
ment, the legal title and right to sue were in abeyance. Her
indorsement of the paper to Auerbach, made as it was before
her appointment as administratrix, did not pass the legal
title to him. She did not hold the legal title then, and
could not transfer that which she did not own. Hence,
when this bill was filed, the legal title was in her, in her
representative capacity. 'It results that to any suit insti-
tuted for the enforcement of the contract, or any lien
growing out of it, she was a necessary party; and Auer-
bach, if entitled to the recovery, or a part of it, was also
a proper party, that his interests might be protected.—
See statement of facts in the case of *Watts v. Gayle*, 20
Ala. 817. This is not the case of a suit by several com-
plainants, some of whom have no right of recovery. The
recovery in this case, if one be had, is one and indivisible.
It is the assertion of a lien, legally held by Mrs Clements as
administratrix, in the fruits of which Auerbach claims an
interest. There is no misjoinder of parties complainant, and
the decree of the chancellor, sustaining the demurrer on that
ground, was an error.—See, as to assignability of the obli-
gation, *Skinner v. Bedell*, 32 Ala. 44; *Henley v. Bush*, 3 Ala.
636.

The order given by Clements, intestate, in favor of N. Col-
lins & Co., is anterior in date to the claim of purchase by
Auerbach. It is an order on Pritchett, the maker of the
cotton obligation, to deliver to N. Collins & Co. enough cot-
ton to pay a note they held against Clements for two hun-
dred and seventy-one 22-100 dollars, "which will be credited
on the note I hold against Mr. L. W. Pritchett." This order
was never accepted in writing. The testimony of Collins
and Pritchett proves that before Auerbach's claim accrued,
this order was shown to Pritchett; that he stated he had
found mortgages and incumbrances on the land he had bought,
of which he had no notice at the time of his purchase, which
he had paid, or would be required to pay, to save his land.
That, after being allowed for such payments, if no other
mortgages were produced, he would then deliver the cotton
to them, in obedience to said order. This promise was made
orally. No other mortgages were produced, and Pritchett,
in December, 1875, delivered to Collins & Co. all the cotton
produced on said fifty acres of land during that year, which

[Auerbach et al. v. Pritchett.]

fell short of paying up said order. The question arises, was this verbal acceptance sufficient?

Section 2101 of the Code of 1876, declares that " no person within this State must be charged as the acceptor of a bill of exchange, unless his acceptance is in writing, signed by himself or agent."—See *Sands v. Matthews*, 27 Ala. 399. But the contract, which is the foundation of the present suit, is not a bill of exchange. A bill of exchange is an order or letter, requesting the payment of money. The present contract is an order, requesting the delivery of cotton. The statute has nothing to do with this case.

In the absence of the statute copied above, an oral acceptance of a bill of exchange would be legal and binding.—See Leading Cases on Bills of Exch. 42, *et seq.*; Story on Bills, § 242 ; 1 Pars. on Notes and Bills, 385, and notes ; Edwards on Bills and Notes, 409. And no other mortgage on said land having come to light, the conditional acceptance or promise made by Pritchett became absolute, upon which an action at law might have been maintained by Collins & Co. This, then, rendered Pritchett liable to pay them, before the claim was attempted to be transferred to Auerbach.

But the fact that Pritchett, by accepting Clements' order, has bound himself to deliver the cotton to Collins & Co., is not necessarily a defense to the claim asserted by Auerbach. It is possible for him to bind himself to pay to each. If a promissory note (or other evidence of debt), is purchased on the faith of a promise by the maker to pay it, he will be compelled at all events to pay the assignee, and is estopped from asserting the invalidity of the note as between himself and the payee, whether on the ground of fraud in the original contract, not known at the time of such promise, or of a subsequent failure of consideration. And the same rule would apply, and for the same reason, if the promissor had previously accepted an order to pay the debt, or any part of it, to another.—See 1 Brick. Dig. 271, § 287. See, also, *David v. Shapard*, 40 Ala. 587 ; *Traun v. Keifer*, 31 Ala. 136 ; *Lowry v. Stewart*, 8 Ala. 163.

The testimony in this record shows that Auerbach credited Mrs. Clements one hundred dollars, on the faith of the cotton obligation as collateral security, before he or his agent had any interview with Pritchett in regard to it. In reference to this one hundred dollars, there is no pretence that Pritchett has done anything to estop him from making defense. As to the terms of the interview afterwards had between Brown, the agent of Auerbach, and Pritchett—on the faith of which it is alleged for appellant that he purchased the obligation—Brown and Pritchett, the only per-

sons present, are in direct conflict. Brown derives some confirmation from the testimony of Auerbach, proving an interview, afterwards had between him and Pritchett; and Pritchett was, perhaps, equally confirmed by the testimony of the witnesses, Eagerton and Brall. The onus of proving Pritchett's agreement to pay the obligation to Auerbach, rested on the latter, and we do not think the testimony preponderates sufficiently in his favor to justify us in finding it as one of the proven facts in this cause. The result is, the complainant must fail on the merits of his case.

Mr. and Mrs. Clements, being residents of the State of Florida at the time the former died, Mrs. Clements can claim no exemptions under the statutes of Alabama; and if she asserted any such claim under the statutes of Florida, it was necessary to set it up in the bill, and establish it by proof. But, if this were done, it could not prevail over the transfer of the cotton to Collins & Co., made by Clements in his life time.

Decree of the chancellor affirmed.